WESTERN UNION TELEGRAPH COMPANY v. CLAUDE HUDSON.

Decided May 29, 1909.

**1.—Telegraph Company—Death Message—Negligence—Insufficient Evidence.**

In a suit against a telegraph company for damages for negligent delay in the delivery of a death message, the plaintiff was asked the following question: "Making the same kind of connections you made, if you had gotten off on the evening train would you have gotten there in time to attend your father's funeral?" To which the witness answered, "Yes." Held, the answer of the witness was obnoxious to the objection that it was manifestly her opinion, not based upon any state of facts, and in the very nature of things was but a supposition of the witness.

**2.—Same.**

Evidence considered and held insufficient to show that the delay of the telegraph company in the delivery of a death message was the proximate cause of the failure of the addressee to be present at her father's funeral. Justice Speer, dissenting.

Appeal from the District Court of Dallam County. Tried below before Hon. J. N. Browning.

*Jno. W. Veale, Geo. H. Fearons* and *N. L. Lindsley,* for appellant.

*C. J. Carter* and *D. B. Hill,* for appellee.

CONNER, CHIEF JUSTICE.—Appellee instituted this suit in the District Court of Dallam County to recover damages for the negligent failure to seasonably deliver the following telegram: "12/2/1906. To Claude Hudson, Dalhart, Texas. Grandpa died yesterday; come at once, Dublin; heart failure. R. H. Etheridge, Wilson, Texas." The wife of appellee was the daughter of the grandpa named in the message and R. H. Etheridge was a son.

The evidence warrants the conclusion that the deceased, J. H. Etheridge, died about 5 p. m. on the evening of December 1, 1906; that the message given was delivered to appellant's agent for transmission at the town of Dublin, Texas, about 7:30 or 8 o'clock a. m. December 2d; that the telegram was not delivered to appellee, who was well known in the town of Dalhart, until about 6 p. m. on December 2d—too late to enable appellee's wife to leave Dalhart for Dublin on a passenger train scheduled to leave for Fort Worth about 1:30 p. m. Appellee's wife took the earliest train leaving Dalhart thereafter, about 4 o'clock a. m. of December 3d, arriving at Dublin about 2:30 o'clock on the afternoon of the 4th day of December, 1906, from which place she proceeded overland some fifteen miles to Wilson, but too late to attend her father's funeral. The trial resulted in a verdict and judgment in appellee's favor for the sum of five hundred dollars.

We think the evidence authorized the finding in appellee's favor on the issue of negligence, but error is assigned to the action of the court in overruling objections to the following question and answer of Mrs. Dora Hudson, wife of Claude Hudson, while testifying, viz.: "Q. Making the same kind of connections as you made, if you had gotten off on the evening train would you have gotten there in time to attend your father's funeral? A. Yes." To which question and answer the defendant objected for the reasons, among others, "that the answer of the witness was manifestly her opinion, not based upon any state of facts, and in the very nature of things was but a supposition of hers," etc.

The answer of the witness above quoted is evidently a conclusion, and constitutes substantially the only evidence of a possibility that Mrs. Dora Hudson could have arrived at the place of her father's burial in time had the telegram been delivered, as it ought to have been done, early enough in the forenoon of December 2d to have enabled her to take the southbound train leaving Dalhart about 1:30 p. m. of that day; and the majority have concluded that if the answer was admissible at all, under the circumstances and in the absence of the facts upon which the witness based her conclusion, which they are inclined to doubt, it at least is insufficient to support a verdict in appellee's favor, which is made the basis of a subsequent assignment.

Mrs. Hudson, after stating that she took the train at Dalhart about 4 a. m., December 3d, testified that: "I went as straight from Dalhart to Dublin as I could go, and went over the Ft. Worth & Denver Railroad from Dalhart to Ft. Worth and over the Santa Fe and Houston & Texas Central from Ft. Worth to Dublin. . . . When I reached Dublin on the evening of December 4th, at about 2:30 o'clock,

I got a buggy and team and went out to my brother R. H. Etheridge's, and got there about six o'clock in the evening. My father was buried at Carrolton, about four or five miles away from where my brother lived at Wilson; I went to his grave after I got to my brother's."

R. H. Etheridge, after stating that his father had died on the evening of December 1st, and that he had prepared the telegram in question for transmission, testified that: "J. H. Etheridge was buried at Carrolton, Hamilton County, Texas, on the evening of the third day of December, 1906. The burial was deferred from the second to the third day of the month awaiting the arrival of Mrs. Dora Hudson, wife of Claude Hudson and daughter of said J. H. Etheridge. . . . Mrs. Dora Hudson, in response to the telegram, arrived at Dublin over the Texas Central about 1 o'clock, and arrived at my house late in the evening of the same day, which was on the fourth of December, 1906, and the day after the funeral of said J. H. Etheridge.' On cross-examination he stated that his father was in his seventieth year and had been ill for about two years; that he died very suddenly, his disease being, as diagnosed by the attending physician, "dropsy of the heart," and further testified: "I can not state of my own knowledge the time of the arrival of Dora Hudson at Dublin, and can only say from her statement to me about the matter. I was not at Dublin to meet her, but had parties there to meet her until Sunday night. . . . I did not receive a message from Claude Hudson at any time concerning the death of my father. We waited to bury my father as long as the circumstances would permit, and not having heard from my sister, did not know that she was coming at all."

No witness testified to the time of the usual arrival at Fort Worth, Texas, of the Fort Worth & Denver passenger train which daily left Dalhart at 1:30 p. m., nor did any witness testify to the time of arrival or departure of trains at Fort Worth for Dublin, or that continuous passage by train from Dalhart to Dublin was possible. In the absence of such facts we do not see how it can be said, save from the mere conclusion of the witness, that she could have arrived in Dublin in time to have attended her father's funeral. If her answer be accepted as a statement of a fact and not a conclusion, it is predicated upon the assumption that she would have made the same kind of connections she did after leaving Dalhart. As we have seen, she testified that she "went as straight from Dalhart to Dublin" as she could go, and was actually occupied in making the trip some thirty-six hours. As we have also seen, the uncontradicted testimony of R. H. Etheridge was that the burial was delayed "as long as the circumstances would permit," and that it occurred some twenty-six hours after 1:30 p. m. of December 2d—the earliest time appellee's wife in any event could have left Dalhart, and some ten hours less than was actually consumed by Mrs. Hudson in her trip. A necessary element in appellee's right of recovery required that he establish his allegation that appellant's negligence was the proximate cause of the injury for which he sought to recover—that is, that had there been no negligence as alleged in the transmission of the telegram appellee's wife would have been able to attend her father's funeral. The burden was upon appellee to so establish, and the majority think that the least that can be said of the

evidence we have given is that it is altogether too inconclusive to over-
come the burden and support the verdict.

The judgment will accordingly be reversed and the cause remanded.

*Reversed and remanded.*

SPEER, ASSOCIATE JUSTICE, *dissenting.*—I think the ruling of the
court in admitting the answer of the witness Mrs. Dora Hudson, for
which the judgment has been reversed by the majority, was correct, and
that such testimony is legally sufficient to support the judgment. The
objection made and sustained is that the answer of the witness was an
opinion not based upon any state of facts, but I think it is doing vio-
lence to the record to say that the facts upon which the witness based
her opinion are not given. The record does disclose that Mrs. Hudson
was in Dalhart at the time she received the message; that her father
was buried about fifteen miles from Dublin; that it is about five hun-
dred miles from Dalhart to Dublin; that there was a passenger train
on which she could have left for Dublin December 2d at about noon,
and that the body of her father was not interred until late in the
afternoon of December 3d. While the evidence also shows that in
going from Fort Worth to Dublin she traveled by way of the Santa Fe
and Houston & Texas Central roads, still everyone knows, as we our-
selves judicially know, that there is another line of railroad, the Fort
Worth & Rio Grande, directly from Fort Worth to Dublin, and the
jury might well have found, as they did, from these facts that Mrs.
Hudson would have been able to attend her father's funeral if the mes-
sage in question had been delivered to her in time for her to have
taken the noon train on December 2d. The reason for the reversal by
the majority appears to be based upon the conclusion that necessarily
Mrs. Hudson could not have reached Dublin and attended the funeral
if she had taken passage on the noon train of December 2d, because
she actually consumed a greater number of hours than was thus af-
forded her in the route actually taken. But it will be observed that she
testified that she could have gotten to her father's funeral if she had
gotten off on the evening train and had made the same kind of con-
nections she made the next day. Now, making "the same kind of con-
nections" does not necessarily mean that she must have gone over the
same road or roads from Fort Worth, or that she must have taken the
same train she did in fact take, but fairly meant no more than that if
she had made as quick connection with the next carrier, which, as I
have pointed out, might have been the Fort Worth & Rio Grande, she
would have been able to reach Dublin in time to attend the funeral.
While it may be true that her testimony is the expression of an opin-
ion, yet, the facts here detailed upon which such opinion is based hav-
ing been given, I think there was no error in permitting her to answer
as she did; especially is this true in view of the fact that she was in
no manner cross-examined to show the impossibility of her making the
journey within the time she said she could.

For these reasons I dissent from the majority view, and hold that
the judgment should be affirmed.